Let's turn to Jacobs v. Boeing If the Court please, my name is George Hunter, representing the appellant, Ms. Joan Jacobs. I'm standing in this morning for Mr. Rick Gauci, who was the original attorney on this case, but had a death in his family on Sunday. Ms. Jacobs assigns five errors to the ruling by the District Court. The first is with respect to the exhibits not being authenticated. On this issue, the Boeing Company submitted a number of documents in response to plaintiff's request for production. Those documents were used in the brief in opposition to the summary judgment motion. And the we believe that the Muljack production case and or versus Bank of America are dispositive on the issue of whether or not those are authenticated and admissible for purposes of summary judgment. I understand it. Get me if I'm wrong. Those documents, the information of those documents was used by the District Court in this decision. Am I incorrect on that? No, I don't think that the judge considered those documents. And I have a major misunderstanding of the record, then, because I thought he considered the evidence in those documents. Seems to be a dispute in that in the brief. I don't know. I wanted to clear that up. But your it's our position. Excuse me. Your opinion is that the District Court did not consider anything in those documents. That's correct. The second error is the exclusion of all events prior to January 30th, 1998. 1998, the January 30th, 1998 date being the date of the settlement between the Boeing Company and Ms. Jacobs on her first EEOC complaint. Boeing cites no case for the proposition that the pre-settlement events are irrelevant. As a matter of fact, in the case that we cited Dozier, again, we think that it's clear that those facts, those events are admissible as an indication of a continuing pattern of discrimination. I draw the court's attention specifically in the appellant's brief to pages 54 through 59, which chronicles I believe 30 events which are relevant on the issue. Also cited by Ms. Jacobs is Lyons v. England, which also indicates that otherwise time-barred evidence is admissible for purposes of showing background in these kinds of circumstances. Third assignment of error is with respect to the 180 day statute of limitations and the Title VII administrative process with the EEOC. Again, we've stated in our briefs the cases that we're relying upon, and we think that it is abundantly clear in this circuit that the 300 day statute of limitation applies and not the 180 day. The fourth assignment has to do with the district court's finding that there was no adverse employment action. Clearly, it is our position that the facts, again, going back to pages 54 through 59, the 30 alleged assertions there would indicate that there was an adverse employment action, that the evidence which supports that is admissible, and that it clearly raises the question of fact as to whether or not there was a pattern of discrimination leading up to Ms. Jacobs' resignation on the 21st of March, 2000. I want to ask, I'm sort of going back here on the statute of limitations question. Is it your position that the old events are themselves recognizable as bases for liability, or is your sole argument that the evidence is relevant to help explain current claims? It is the latter. And it's your position that the court did not consider the evidence even for that purpose? That's correct. What difference would that have made in terms of the establishment of a genuine issue of fact, a retaliation claim? If those events are eliminated, then it really does appear that Ms. Jacobs' concern was that she was assigned to a machine which was dangerous in the absence of any evidence of discrimination or other things which she believes occurred. I'm not sure I understand your answer exactly. If you could bring this evidence to a jury, what would you be arguing from it? What would you be arguing? Oh, I see. That there was a continuing pattern of discriminatory conduct which resulted ultimately in her constructive discharge. Discrimination on the basis of? Retaliation for having filed the original 1997 complaint with the EEOC. What were the discriminatory acts? Judge Grabers asked about that. But what were the acts of discrimination that you would argue? You can argue the concept, but you would tell the jury what? This happened, that happened. What were the discriminatory acts? In 1996, when she first returned from layoff, she was told by a co-worker that on her first day back at work, that he had been told that her superior had already designated someone else to take her job when she failed, that everyone in the department believed that she would fail. Within 15 days of that conversation, she was told by an acting supervisor who made comments, that is the acting supervisor made comments to her regarding him being reincarnated and attached to her back pocket. He made comments about not seeing her panty lines on her jeans. If your theory is retaliation, I'm not sure why any of that matters. In other words, the cases hold that there doesn't have to actually be discrimination for there to be retaliation. That's correct. So why isn't it irrelevant whether there was actual discrimination or not if your theory is retaliation for having filed the complaint, in good faith, whether it's valid or not? Well, ultimately you are right. It's not an issue of whether or not there was discrimination. Why is this an error, then, on the part of the court? Because these acts, when taken as in total, I do believe established that what she was originally complaining about and what she complained about subsequent to the EEOC settlement were all connected. The machine that was faulty that caused the slamming continually was doing this. She continually complained about it, was injured by it, and that when she complained about it, then they retaliated, even though the machine kept doing it and they sent mechanics over and whatever, but it kept happening. And then she was criticized for the work she was doing on the machine. I'm having a hard time, too. Is that the theory? Yes, yes, it is. And eventually took the machine out of service, as I understand it. Shortly after she quit, they took the machine out of service. Number 84? That was the second machine. And let's see. First machine was 39, I believe. That was the heavy machine. That's correct. 34 was the light machine. Okay. And that was also after Wisha entered a citation with regard to that machine. I'll reserve the remainder of my time. You may do that. Good morning, Your Honors. I'm Sonia Lingnick representing the Boeing Company here today. And this case is really much simpler than the briefing would suggest. Judge Rothstein's order granting summary judgment should be affirmed. And with respect to your initial question regarding the evidence that the court considered, Judge Rothstein indicated that she considered all the evidence that was submitted by the parties. And Boeing had filed a motion to strike as part of its reply. And she struck that motion as moot because even considering all the evidence, even what Boeing asserted was inadmissible, she found there still was no genuine issue of material fact. All the evidence with regard to these machines, the log records, and all that stuff, was before the district judge. According to her order. Okay. Now, assuming that, it seems to me that you have two machines, these riveting machines. And it seems to me if I read the record, unless I'm reading it wrong, there is a problem. The slamming, they assigned engineers every morning to check it and whatever. In fact, she got, there was an issue of a piece of coupon that she was trying to punch that cut her arm. And then there's an issue of how bad the cut wasn't on. So apparently there's something going on with the machine. Now, what does that have to do with anything? I'm trying to figure out how that goes to the next step. Well, I don't know. And I think that. But I think what counsel is saying, what the briefs are saying, is she continues to complain this machine is dangerous. She's getting hurt by it. And all you're doing is keeping her on the machine and harassing her with male employees about her lousy work on the machine. Well, I don't think that there's anything in the record that male employees were harassing her about her lousy work on the machine. Well, she did something when they took the wheels off the machine. And she had a dent in one of the parts in one of the wing parts. And they had to work overtime to fix them. And, I mean, there's a lot of stuff here. But I'm trying to sort out. It seems as though there was a machine problem. And it seems there were some male employees harassing her doing stuff, whatever it is. Whatever. And I think that the stuff that you're referring to happened back in 1996 when she was working on a different machine. And that machine worked on very large parts that weighed 1,000 pounds or more. That was the wing machine. Yes. It was a completely different drivematic machine. And these are humongous machines. All of these are very large machines. They're not like a drill that you get from Home Depot. They cost over $100,000 each. So it's a big machine. And back in 1996, she was working on a machine that drilled holes and then put rivets into very large airplane parts. And at that time, there were wheels that the part would sit on and it would roll onto the machine. Men would set that up for her and then she would be able to do the riveting. And at that time, one of those large panels started to roll and she went to move it. And that's how she was injured on that machine. And at that time was when everything occurred that she was alleging with there not being enough wheels. And then there were dings and then other employees had to work overtime to fix the dings. And she was making some allegations that that overtime work really wasn't necessary, that the part had been perfect and they damaged it in order to get overtime. So that was a long time ago. The injury that occurred in December of 1999 was when she was on an entirely different machine. Number 84. Number 84 that drilled holes and riveted much smaller parts. Most of these were long rails and they did not weigh anywhere near 1,000 pounds. And so that was a different machine and it did have some issues. But Joan Jacobs was not the only person. It had some issues enough that they assigned mechanics to look at it every morning and they finally took it out of service. That's correct. But Joan Jacobs was not the only person assigned to that machine. There were at least four other male employees and a female employee. I saw that in the record, too. What does that mean? Boyden operates on three shifts. And so there were other employees who worked on that machine on other shifts. It's not relevant to the fact that other people worked on it if it's a dangerous machine. And that would be relevant to an issue such as the issue that WISHA investigated as to whether there was a dangerous condition and Boeing should have done something about it. It's really not relevant to the issue of sex discrimination or retaliation. I can see why it's not relevant to sex discrimination, but why couldn't it be relevant to the retaliation claim if she was treated differently with respect to her complaints about the machine than other employees were? Well, as she testified at her deposition, other employees complained about the machine as well. And the other employees who worked on the machine on the different shifts, they had not filed EEOC charges. She had filed one in 1997. She was treated exactly the same as they were. Another thing that is in the record is that she was assigned to that machine in 1996, in December 1996, which was about seven or eight months prior to her filing the EEOC charge. And she had problems with the machine from the very beginning, back in 1996. So that was even before she filed the charge. So it's hard to find an inference of retaliation here when the supposedly retaliatory event, which is assigning her to the machine and not helping her when she complained about it, started even before the charge. I don't understand that because I don't know. Because she, as I put the sex discrimination aside for a minute, she files an EEOC claim after she was put on the new machine, right? And it was after she'd been on the machine for a while and was having troubles, right? Pardon? And she filed the EEOC claim after she was putting on the machine and having troubles right off the bat. Right. What's your understanding of what she said in the EEOC claim? I see what your question is. In her EEOC charge, she was not talking about the assignment to the faulty machine in December 1996. She alleged that her prior workplace injury from the first machine with the huge panels was something that was deliberately done by her coworkers, that they set her up for injury by taking away the wheels. And she also had some other allegations that Mr. Hunter referred to, such as someone wanting to be attached to her back pocket and talking about her panty lines were things that she alleged in that EEOC charge. So in sum, there's no ---- Is that your opinion of what the basis of her discrimination claim is right there? On appeal, it appears to me that she's not arguing that she has an actionable discrimination claim because everything in the appeal brief discusses constructive discharge as a retaliatory act. So if we eliminate this, so we can eliminate that, so then we're focusing then, in your opinion, an appeal on the constructive discharge and retaliatory acts. Yes. What's your position on why she was discharged? My position is that she resigned. And she had taken a leave for personal reasons related to some family issues. She came back, and the first day she was assigned to a machine. I believe the individual was absent, and she worked on this person's machine. It was fine. The second day back, she was assigned to a different machine, and she had worked on that machine before with no problems. But when she came back and she was assigned to the machine this time, she noticed that the employees who had been using the machine were using washers for shims. She thought that was not a good idea because the washers could break. And then she also noticed that the spindle where the drill is attached drifted down about an inch. And what that means is that it was out of alignment, and she said that she thought that if she used it, it would crash the machine, which would damage the machine. And so she told her supervisor that the machine was a piece of crap and that she didn't want to work on it anymore, and she was threatening to quit. So she went home, and her supervisor, her supervisor's supervisor, her HR representative, and her union representative all encouraged her not to quit. They encouraged her to take a leave of absence until they could find a problem. They encouraged her to use the Employee Assistance Program, and then also offered her something called the Quality Through Training Program, which is a training program that hourly employees can go through if they want to transfer to another position. So she had many options, and the situation that seemed to be leading to her quitting was working on this one machine for a few hours one day. And that's where I fell apart in the record. Is there anything in the record that shows the machine was good, bad, didn't work, was faulty, that her claims were correct, or is that even relevant? That's not in the record, and I don't think that's relevant, because even if it were a machine that did not work, there's no evidence that she was assigned to that machine because of her gender or because she had filed an EEOC charge back in 1997. I mean, we're talking about March 2000. The supervisor who she was working under was not the same supervisor who she was under before. The general supervisor was a different general supervisor as well. Is the hostile workplace a new issue on appeal? A hostile workplace appears not to be an issue on appeal in terms of a sexual harassment hostile work environment claim. Well, I was trying to sort through it. I thought because the machine is a dangerous instrument that it kills people or whatever, that it would get off the machine that she was being subjected to a hostile workplace. Did I misunderstand that? And that's something that you'll have to ask Mr. Hunter about, but it appeared to me from his brief what he was saying was that there was all this background evidence that led to the constructive discharge, but he wasn't asserting or Ms. Jacobs wasn't asserting a separate claim for hostile work environment, because at the lower court we did not brief that issue of a sexually harassing hostile work environment. Are there any other issues the court would like to have addressed? I don't think so. Okay. Well, in sum, I'd just like to sum up that there is absolutely no evidence that Ms. Jacobs was treated differently because of her gender or because she filed an EEOC charge in 1997. And the court considered all the evidence that was submitted by both parties, applied the correct legal standards, and properly granted summary judgment. Thank you. Thank you. Mr. Hunter, you have some rebuttal time remaining if you'd like to use it. No rebuttal. Okay. Thank you, counsel. The case just argued is submitted. And we'll take a very short break before we hear the remainder of the morning calendar. All rise.
judges: Brunetti, Tg Nelson, Graber